a manifest every trip, night and day. If the act of 1838 applies to ferry boats, they would all have to visit St. Louis twice a year to have their hulls or boilers and machinery inspected. Some of these boats would have to go some five hundred miles and back, making a voyage of one thousand miles; some of them would never get back, being unable to stem the current. Whilst they were absent, another set of boats would be required to supply their places, or the ferries be without boats. A license from the United States and a license from a state cannot both be necessary to do the same thing; they cannot both be necessary to authorize the owners of a steamboat to employ her in ferrying. In the above cited case of Gibbons v. Ogden, the supreme court says: "The word 'license' means permission or authority; and a license to do any particular thing is a permission or authority to do that thing; and if granted by a person having power to grant it, transfers to the grantee the right to do whatever it purports to authorize." If, then, the United States have authority to grant a license, and under and by virtue of the laws of the United States such license be granted, then any license from the state to do the same thing would be wholly nugatory and inoperative. If the state has authority to grant a license, and does grant one, then a license from the United States would be wholly nugatory and inoperative. A license conveys the right to do the thing or it conveys no right; if it conveys the right to do the thing, then no other or further conveyance from any person can be necessary. A license from the United States to carry on the coasting trade, it is urged, is necessary for a steam ferry boat. If this be so, then a license from the state would be of no avail, and need not be obtained. The states have exercised the right to license and regulate ferries from the commencement of the government to this day.

The laws of the United States contain no regulations for ferries as such; they provide only for the security of the revenue of the United States, and against explosions of boilers, bad hulls, &c. The laws of the states contain a great number of regulations of ferries, as such, deemed highly essential, if not absolutely necessary, none of which are contained in the laws of the United States; they are also the subjects of taxation by the states. Thus the laws of Missouri provide: (1) A ferry must be necessary, and not so near as to conflict with another ferry. (2) The person applying for license must be a suitable person to be intrusted with a ferry. (3) He must pay the tax—it may amount to $500. (4) He must give bond, with sufficient security, conditioned for the faithful performance of his duties. (5) The rates of ferrying must be fixed, and he is not allowed to exceed them. (6) He is to keep good and suitable boats, and sufficient hands to attend on all occasions. (7) He is to give due attendance. (8) He is made liable for damages. (9) He is to keep the rates of ferriage posted up at the ferry. (10) Fines for various acts and omissions are specified, and the manner of collecting them, with a variety of other provisions. All these provisions are abrogated, if. the new doctrine be true, and none made to supply their place. If, as alleged, inspection of hulls and boilers be necessary, the states are competent to require it.

Congress has been careful not to encroach upon the jurisdiction or prerogatives of the states; and I think the court is not authorized, from anything in the act of 1838, to say that congress has made this great inroad into the ancient and hitherto undisputed jurisdiction of the states, and done so by mere implication—there not being one word in the act of 1838 about ferries or ferry boats. For a more full discussion of some points involved in the consideration of this case, I must refer to the opinion delivered in the case of U. S. v. The James Morrison [supra], a copy of which is filed herewith.

For the above reasons, the demurrer to the answer is overruled. this libel dismissed, and the bond given by the owners canceled, and a decree for costs against the informers.

## Case No. 16,704.

UNITED STATES v. WILLIAMS.

[See Case No. 17,708.]

## Case No. 16,705.

UNITED STATES v. WILLIAMS.

[4 Am. Law J. (N. S.) 486.]

District Court, E. D. Pennsylvania. Feb., 1852.

### FUGITIVE SLAVE LAW.

[1. The fugitive slave law (section 7) makes it a criminal offense knowingly and willfully to frustrate or retard the attempted recapture of a fugitive slave by his master, whether it be by force, active or passive, or stratagem.]

[2. The offense being a misdemeanor, one aiding or abetting another to commit it, whether he be absent or present, is guilty as a principal.]

[This was an indictment against Samuel Williams under the seventh section of the fugitive slave law.]

KANE, District Judge (charging jury). The case derives all its interest, and almost all its importance, from circumstances that can have no bearing upon its determination. It is immaterial what was the character or what were the consequences of the Christiana outrage, so far as this trial is concerned, provided it involved the crimes laid in the indictment. Equally immaterial is it, what may be the feelings, whether of sympathy with the prisoner or of indignation against him, that may obtain in this